# Sponsler's Appeal.

1. Where the language of a will is clear and unambiguous, a doubt suggested by extrinsic evidence of the testator's circumstances at the time he wrote the will cannot be permitted to affect the construction of the will.

2. Where a codicil contains a bequest similar to a bequest in the will, to the same legatee, the language of both being unambiguous, whether such additional bequest is cumulative or merely repetitive depends solely on the testator's intention as deducible from his testamentary language.

3. A legacy of " fifteen shares of ' second preferred ' C. V. R. R. stock" is a general legacy. The fact that at the date of the will and subsequently to the time of his death the testator owned fifteen shares of said stock does not make the legacy specific.

4. Testator by his will provided, inter alia, as follows : "I also bequeath to her, the said Alice, fifteen shares of 'second preferred' C. V. R. R. stock, and one second mortgage, $500, bond (No. 1) of the said R. R. Company." Afterwards he added a codicil, which provided in its first paragraph as follows : "I further give to my cousin Alice Rheem, in addition to what I have given her by my will, fifteen shares of C. V. R. R. stock, preferred, one Cumberland Valley Railroad eight per cent. bond, and thirty shares of Carlisle Deposit Bank stock." It appeared that testator wrote his own will, but that the codicil was written by counsel at testator's dictation; also, that at the time the latter was written, the will was not read nor examined. It also appeared that at the time of his death, and for several years prior thereto, including the time when he made his will, testator had only fifteen shares of Cumberland Valley Railroad stock :

*Held*, that the legacies in the will and codicil were cumulative, and not repetitive, and that the legatee was entitled to thirty shares of stock and two mortgage bonds.

June 2d, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Cumberland county :* Of May Term, 1884, No. 36.

This was an appeal by George Sponsler from a decree of said Court in the matter of the distribution of the funds in the hands of John Hays, executor of the last will of A. L. Sponsler.

From the report of J. M. Weakley, Esq., the Auditor to whom the distribution of the balance in the hands of the executor was referred, the following facts appeared : The fund for distribution was made up of a cash balance of the personal estate, together with some unconverted securities held by testator in his lifetime.

Testator's will dated November 19th, 1880, provided, *inter alia,* as follows :—

"I also give and bequeath to the said Alice fifteen shares of 'second preferred' Cumberland Valley Railroad stock, and one second mortgage, $500, Bond (No. 1) of the said R. R. Company."

A codicil, dated June 28th, 1882, (the day before he died) began as follows:—

"I further give to my cousin Alice Rheem, in addition to what I have given her by my will, fifteen shares of Cumberland Valley R. R. stock, preferred, one Cumberland Valley R. R. eight per cent. bond, and thirty shares of Car Deposit Bank stock." Then follow several legacies to other persons.

The will and codicil were proved July 3d, 1882, and letters testamentary were granted to John Hays, the executor.

The appellant, George Sponsler, a brother of the testator, was one of the residuary legatees under the will above referred to.

It was admitted before the Auditor, that testator wrote his own will, but that the codicil was written for him by counsel; that the will was not read nor examined at the time the codicil was written, and that testator dictated the codicil to counsel who wrote it.

It was also admitted that, at the time of his death and for several years prior to it, including the time when he made his will, testator had but fifteen shares of Cumberland Valley Railroad stock.

The principal contention before the Auditor was upon the construction of the portion of the will and codicil above quoted. The appellant sought to limit the claim of the legatee to the specific fifteen shares of stock actually owned by testator at the time of making his will, and up to the time of his death; but the legatee, claiming that she was entitled to thirty shares of stock in all, under the will and codicil, averred her willingness to accept out of testator's personal estate the cash value of the additional fifteen shares of stock bequeathed to her in the codicil.

The Auditor concluded that the legacies of stock were not specific, but were general; and he therefore awarded the fifteen shares of stock in kind to the legatee, together with the cash value of fifteen additional shares. He also awarded two mortgage bonds to her.

Exceptions were filed to the Auditor's report, that he erred in awarding both the cash value of the additional fifteen shares of stock, and the additional bond, on the ground that the bequests of the codicil were but repetitions of the legacies contained in the body of the will.

The Court (HERMAN, P. J.) dismissed the exceptions, and confirmed the report of the Auditor (no opinion filed), where-

upon George Sponsler took this appeal assigning for error the dismissal of his exceptions to the Auditor's report, and the decree of the court.

*A. B. Sharpe*, for appellant.—The intention of the testator must govern. This testator could not have meant to give the legatee what he never had to give. Why, then, give her money in lieu of the additional fifteen shares of stock and two bonds, when it is manifest that he never intended to give her more than one? The Auditor does not refer in his report to the distinction between the cumulation and the repetition of legacies, but decides the case upon the question as to general and specific legacies, and we submit that in finding that the legacy in the will of the fifteen shares of stock was general and not specific the Auditor erred, for it was the only stock testator had, and if it clearly appears from the context that the testator meant to bequeath the *identical* stock he was possessed of at the date of his will, such manifest intention will render the legacy specific, although testator has not expressly declared such intention nor expressly referred to the stock: 2 Williams on Executors, 6th ed., page 1259, note (1).

The real question involved is, whether the legacies are cumulative or repetitive. We contend they are the latter. If a legacy be of some specific thing, and be repeated ever so many times in the will or codicils it can only amount to one bequest, since the same identical thing can only be bequeathed once. There is no presumption either against or in favor of accumulation where the repetition occurs in a codicil, as here. It is in all cases a question of intention, to be sought for and collected from the language of the testator, taking the will and codicil together: Westcott *v.* Cady, 5 Johnson's Ch. Rep. 334; Jones *v.* Executors of Creveling, 4 Harrison (N. J.) 129. For clear and careful distinction between cumulative and repetitive legacies see: Williams on Executors, 1399 and 1400, 6th American edition; Perkins's Notes, section 7 of Cumulative Legacies; Notes to Hooley *v.* Hatton, 2 L. Cas. Eq. *346.

The cases in which this question arises, may be classed under two heads: 1st. Where there is no evidence of the testator's intention apparent on the face of the will. 2nd. Where there is such internal evidence.

1st. When there is no internal evidence of intention, the following positions of law appear established:

(*a*). If the *same specific thing* is bequeathed *twice* to the same legatee in the same will, or in the will, and again in a codicil, in that case he can claim the benefit of one legacy only, because it could be given no more than once.

11 OUTERBRIDGE.—7

(*b*). When two legacies of quantity of *equal amount* are bequeathed to the same legatee in one and *the same instrument*, then also the same bequest is considered a mere repetition, and he shall be entitled to one legacy only.

(*c*). When two legacies of quantity of *unequal amounts* are given to the same person in the *same instrument*, the one is not merged in the other, but the latter shall be regarded as cumulative, and the legatee is entitled to both.

(*d*). When two legacies are given *simpliciter* to the same legatee by different instruments, in that case, also, the presumption is, that the latter is cumulative, whether its amount be equal or unequal to the former. But the presumption may be rebutted if the Court can find in the context of the instruments an intention that the latter gift shall be substitutional.

2d. When there is internal evidence of the intention of the testator. In many cases the will or codicil affords intrinsic evidence that the second gift was intended by the testator as a mere substitution for the first, and consequently that one legacy alone was intended. For example where a latter codicil appears to be a mere copy of the former, with the addition of a single legacy, or where it is manifest that the latter instrument was made for the purpose of explaining or better ascertaining the legacies bequeathed by the former. So if in two instruments the legacies are not given *simpliciter*, but the motive of the gift is expressed, and in both instruments the *same* motive is expressed, and the *same* sum is given, the Court considers the two coincidences as raising a presumption that the testator did not, by the second instrument, mean a second gift, but meant only a repetition of the former gift.

We take it that the same specific things have been bequeathed to the legatee in this case in both will and codicil. All the attributes of a *repetition* are apparent in this codicil.

1st. It is one of " those instruments drawn in *extremis* . . . . and . . . . . executed without being read over and examined by the testator . . . . . and the legacies unintentionally repeated, in the same, or in nearly the same language. All we have to do then, in the application of this rule, is to be satisfied that the alleged repetition was the effect of forgetfulness in the testator:" Jones *v.* Executors of Creveling, supra.

2d. Whilst the introductory words of the codicil are, "I *further* give to my cousin, Alice Rheem *in addition to* what I have given her by my will, [the stock and bond] and thirty shares of Carlisle Deposit Bank Stock;" these words can with perfect propriety be applied to the Carlisle Deposit Bank Stock alone, for that he had not already specifically disposed of. The Bank Stock was not a repetition of a former legacy,

but "the addition of a simple legacy," the right to which we do not dispute.

3d. A glance at the will shows the internal likelihood, the possibility that the error that has occurred, would occur. (1) The legatee was the chief object of his bounty. (2) In his will he devised and bequeathed to her other property and chattels. Was it not most likely that when he was thinking last of her of whom he thought most, he forgot the details of what he had given her, and in giving the stock and the bond, with the Carlisle Deposit Bank Stock, *repeated* the former in the bequest of the latter.

The English cases in point are numerous, where similar legacies have been construed to be repetitive: Heming *v.* Clutterbuck, 1 Bligh N. S. 479; Allen *v.* Callow, 3 Ves. 289; Lee *v.* Pain, 4 Hare 201; Moggridge *v.* Thackwell, 1 Ves. Jr. 472; Fraser *v.* Byng, 1 R. & My. 90; Garth *v.* Meyrick, 1 Bro. Ch. Rep. 30; Westcott *v.* Cady, 5 Johns. Ch. 334.

The language of the bequest in the codicil varies slightly from that in the will, but neither law nor reason demands that a repetition of a bequest should be *in totidem verbis*: Jones *v.* Executors of Creveling, *supra;* Coote *v.* Boyd, 2 Brown 521.

Regarding this as a case of first impression, so far as the jurisprudence of this state is concerned, we respectfully submit whether the rule of the civil law, which puts the case on the testator's intention and presumes against accumulation and in favor of repetition (Corpus Juris Civilis, Dig. 30, 1, 34, *et* 22, 3, 12), does not better accord with reason and justice than that laid down in England, of which Lord THURLOW averred that it "had tended to throw property into jeopardy and uncertainty:" Ridges *v.* Morrison, 1 Brown's Chancery Reps. 393; DeWitt *v.* Yates, 10 Johns. 159.

*John Hays*, for the appellee.—There is no ambiguity in the will or the codicil. The controlling words of the bequest in the codicil are : " I further give . . . . . in addition to what I have given her by my will." The intent is clear, and cannot be outweighed by an imaginary presumption that the testator forgot the bequest in the will. The bequest of the fifteen shares of stock was clearly a general legacy, and the fact that testator possessed at the time just fifteen shares of that stock does not make it specific : Hawkins on Wills, 301; Eckfeldt's Estate, 7 W. N. C. 19. The bequest in the codicil of fifteen shares of the stock was also general; hence the two general legacies go to the legatee. The intention of the testator and the law applicable to it have been rightly construed and applied by the court below. The elaborate presentation of the law relating to repeated legacies in the appellant's brief

may be of use in some other case, but it does not apply to the one at bar.

Mr. Justice GORDON delivered the opinion of the court, October 6, 1884.

On the 19th of November, 1880, Alfred L. Sponsler, now deceased, made his will, in which he devised, inter alia, as follows : " I also give and bequeath to her, the said Alice, fifteen shares of second preferred Cumberland Valley Railroad stock, and one . second mortgage $500 Bond (No. 1), of said Railroad Company." Afterwards, on the 28th of June, 1882, he added a codicil, the first paragraph of which is in the language following : " I further give to my cousin, Alice Rheem, in addition to what I have given her by my will, fifteen shares of Cumberland Valley Railroad stock, preferred ; one Cumberland Valley Railroad 8 per cent. bond, and 30 shares of Carlisle Deposit Bank stock." There is in these papers nothing that presents the slightest ambiguity. The testator, some eighteen months after the making of his will, seems to have come to the conclusion that he would add to that which he had bequeathed to his cousin fifteen shares of the preferred stock of the Cumberland Valley Railroad Company, one 8 per cent. bond on the same company, and 30 shares of the stock of the Carlisle Deposit Bank. His language is clear and positive : " I further give to· my cousin, Alice Rheem, in addition to what I have given her by my will ; " and were it not for something dehors the will itself, there could be no question raised as to the testator's intention. The bequests in both the will and codicil, with the single exception of the bond designated as No. 1, are general. Any 8 per cent. bond, and any 15 shares of the preferred stock of the Cumberland Valley Railroad Company, would meet and fulfil the donation as expressed in the instrument last mentioned. But it is argued on behalf of the appellant that because the testator had, at the time of the making of his will and codicil, and also at the time of his death, but 15 shares of the stock mentioned, therefore, the original bequest, at least as to the stock, must ·be taken as specific, and the bequest in the codicil as repetitive. This, however, is an attempt to make the character of the gift depend upon an intention which must be discovered, if at all, extra the will ; that is to say, upon the fact that the testator had but 15 shares of stock. But we cannot overlook the fact, that this is a doubt raised outside of the papers, and that extraneous circumstances of this kind cannot be considered, if we are to follow the well settled canons of construction, when the testament itself is clear and certain. Looking upon that instrument alone, and, as we have already remarked,

there is nothing at all ambiguous in it.   Had he, in the first place, bequeathed 30 shares of this railroad stock to his cousin instead of 15, no one would have hesitated as to the character of the bequest merely because it turned out that he, in fact, owned but 15 such shares.   How then, can it alter the matter that his first gift was of 15 shares, and that afterwards he added 15 additional shares ?   As he says, clearly as language can make it, " In addition to what I have given her by my will."

Admitting, however, that the first bequest was specific ; what made it specific ?   Certainly nothing but the fact that he happened to have just 15 shares of the stock.   How then as to the second bequest ?   It certainly must be general, for there is nothing in the codicil or out of it tending to qualify the gift.   But this is said to be but repetitive ; the testator intended the stock already given.   If, however, intention is to be gathered from unambiguous expression, this theory cannot be adopted, for the testator has stated in language that cannot be misunderstood that what he gives to the appellee by the codicil is in addition to that given her by the will. There is thus nothing left to the appellant but the hypothesis that the testator, not having his will before him when the codicil was drawn, must have forgotten his previous gift, hence, repeated it in the later instrument.   This, at best, is but a surmise that cannot be allowed to override the positive language of the testator, and it does not follow that he would have directed differently had the will been before him.

We have carefully examined the able argument of the learned counsel for the appellant, and find it based on two assumptions that, in our opinion, he has failed to sustain. They are, first: that there is no evidence in the papers above named indicative of testamentary intent as to the subject-matter in controversy ; that is, as we understand it, which would of itself determine whether the legacy in the codicil is cumulative or merely repetitive.   Second : that the original legacy is specific.   As to the first, we have but to repeat that no one can fail, on reading the will and codicil, to come to the conclusion that Alice Rheem was to have 30 shares of the Cumberland Valley Railroad stock, and doubt arises, not from the language of these papers, but from the altogether extraneous fact that, at the time of their execution, he happened to own but half this amount of the said stock.   Neither can the second assumption be sustained, for there is nothing in the language used to individuate the stock shares.   Had he owned a thousand such shares, any 30 would have answered the bequests ; so had he owned none, the purchase of a like number, or their money value, would have

fulfilled the intent of the testator. We repeat: the whole argument is founded on the fact that the testator had, at the time of the making of his will, but 15 shares of this stock; had he had more or less, or none at all, there would be no place for contention, for then there could be no doubt as *to the* generality of the legacy.

Now, whilst we are willing to admit that if we are to go out of the body of the will for evidence of intention, the fact here mentioned must be allowed to have its weight in the way of making the first bequest specific, though it would by no means be conclusive, yet as this same fact will not apply to the codicil, it follows, unless we agree to hold that the legacy therein contained is but a repetition of the previous one, the appellant's contention has no foundation. But to assume a repetition of the former gift is something that we cannot but consider altogether unwarrantable. We may admit the force of doubts and surmises, but they are not substantial enough to induce us to revise a plainly written will.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.