# Allshouse's Estate.

*Mines and mining—Coal—Surface support.*

Where there has been a separation of the coal from the surface, the owner of the latter, in the absence of agreement to the contrary, has an absolute right to have his surface supported precisely as it was in its natural state.

*Will—Mines and mining—"Usual mining privileges"—Lateral support.*

Authority given by a testator in his will to his executor to sell and convey the coal underlying his lands "with the usual mining privileges," does not authorize the executor to sell and convey the coal and waive and release the right of surface or lateral support. In such a case an executor cannot be surcharged with money which he could have obtained by conveying the coal by a deed containing a waiver and release of the right of surface and lateral support.

*Will—Ambiguity—Extrinsic evidence.*

Where the language of a will is clear and unambiguous, a doubt suggested by extrinsic evidence of the testator's circumstances at the time he wrote the will, cannot be permitted to affect the construction of the will.

Argued April 20, 1903. Appeal, No. 22, April T., 1903, by Priscilla Rumbaugh, from decree of O. C. Westmoreland Co., Aug. T., 1901, No. 35, overruling exceptions to auditor's report, in estate of Samuel Allshouse, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to report of auditor.
The opinion of the Superior Court states the case.
The court dismissed exceptions to auditor's report.

*Error assigned* was decree of the court.

*V. E. Williams,* with him *A. M. Sloan* and *W. A. Griffith,* for appellants.—By the reservation of the coal " with the usual mining privileges," the testator in the case must have meant something more than the mining rights incident to a reservation of the coal alone ; he must have meant the additional fundamental and essential right required and granted practically without exception, in like cases, i. e., the ordinary and usual mining right to mine and remove all the coal without liability for damages : Scranton v. Phillips, 94 Pa. 15.

This intention shall govern in the construction of a will, except, in the special cases, where overruled by the law, the present case not being within any of the exceptions : Findlay v. Riddle, 3 Binney, 139.

It is settled by abundant authority that the circumstances surrounding a testator at the time he makes his will may be considered in construing it : MacConnell v. Wright, 150 Pa. 275 ; Hays v. Leonard, 155 Pa. 474 ; Postlethwaite's App., 68 Pa. 477 ; Follweiler's App., 102 Pa. 581 ; Barnhart v. Riddle, 29 Pa. 92.

The word " usual " is defined " according to general practice ; conforming to common usage : " Anderson's Dictionary of Law ; Carter v. Phila. Coal Co., 77 Pa. 286.

*W. S. Byers,* for appellee.—Support is part and parcel of an estate in the surface of lands ; it is of common right and hence must pass, if at all, by express grant and is not to be defeated by mere implication arising from language that does not import such an effect : Jones v. Wagner, 66 Pa. 429 ; Coleman v. Chadwick, 80 Pa. 81 ; Carlin v. Chappel, 101 Pa. 348 ; Williams v. Hay, 120 Pa. 485.

While it is true that effect is to be given to the intent of the testator expressed in his will, provided that such intent is consistent with the rules of law, yet it has been uniformly held that in expounding a will the question is not what the testator meant.but what is the meaning of his words : Weidman's Appeal, 42 Legal Int. 338 ; Sponsler's Appeal, 107 Pa. 95 ; Hancock's Appeal, 112 Pa. 532 ; Bruckman's Estate, 195 Pa. 363 ; Wusthoff v. Dracourt, 3 Watts, 240 ; Thompson v. Kaufman, 9 Pa. Superior Ct. 305.

OPINION BY MORRISON, J., May 22, 1903:

This is an appeal from the decree of the orphans' court of the county of Westmoreland In re Distribution of the Estate of Samuel Allshouse, deceased. Samuel Allshouse died November 5, 1886, having first made his last will and testament in writing bearing date December 30, 1885. The question for decision arises on the confirmation of the account of the surviving executor, John W. Allshouse, of the last will and testament of Samuel Allshouse, deceased. The testator, by his will, authorized his executors to sell and convey the coal underlying certain of the lands of which he died seized, with the usual mining privileges, and the counsel for the appellant contend that this language authorized the executors to sell and convey the coal and waive and release the right of surface or lateral support. The appellee contends that the executor could not so convey the coal underlying said tracts of land. It is conceded that the determination of the controversy depends upon the construction to be placed upon the words " usual mining privileges." The account of the executor was referred to an auditor, and he was asked to surcharge the accountant, John W. Allshouse, surviving executor of the last will of Samuel Allshouse, deceased, with the sum of $2,785.59, which it is alleged he ought to have received, and could have received by conveying the coal, waiving all right of surface or lateral support. The learned auditor and the court below declined to construe the will of Samuel Allshouse, deceased, as conferring power upon his executors to sell and convey the coal and waive and release the right of surface or lateral support, and the court dismissed the exceptions to the auditor's report, and refused to surcharge as requested. Hence this appeal.

Jones v. Wagner et al., 66 Pa. 429, by its syllabus and doctrine establishes the following rules : " (1) By partition the surface was severed from the underlying coal and the parts were allotted to different heirs, without any limitation as to the removal of coal. Held, that the owner of the coal could not remove it without leaving sufficient support for the surface. (2) The mining property is servient to the surface to the extent of sufficient supports to sustain it, and on default the owners and workers are liable for damages. (3) To control the rule of the common law and usage to mine without observ-

ing this duty, must be so ancient and uniform in the particular region as to amount to a custom. (4) Such custom must be so ancient that the memory of man runneth not to the contrary. (5) The upper and underground estates are governed as other estates, by the maxim sic utere tuo ut alienum non lædas." The testimony and the findings of fact by the learned auditor show clearly that no custom existed in the vicinity of the land or coal in controversy long enough to overthrow the common-law rule, that the owner of the coal could not remove it without leaving sufficient support for the surface. In Penn Gas Coal Co. v. Versailles Fuel Gas Co., 131 Pa. 522, Jones v. Wagner, supra, is quoted with approval (p. 532), where Mr. Justice WILLIAMS, speaking for the Supreme Court, says: " What is the effect of the severance of the coal from the surface? If the sale of the coal be made in the usual manner, the purchaser takes it subject to the burden of surface support, and cannot remove it without leaving a sufficient quantity to support the surface : Jones v. Wagner, 66 Pa. 429; Carlin v. Chappel, 101 Pa. 348." In Pringle v. Vesta Coal Co., 172 Pa. 438, Jones v. Wagner, supra, is quoted with approval, and the Supreme Court say (p. 441): "In that and other cases following in its wake, it has been uniformly held, that where there has been a separation of the coal from the surface, the owner of the latter, in the absence of agreement to the contrary, has an absolute right to have his surface supported precisely as it was in its natural state."

In Robertson and Robertson v. The Youghiogheny River Coal Company, 172 Pa. 566, the subject of surface support is considered by the Supreme Court, (page 571), where Mr. Justice WILLIAMS speaking for the court on this subject says : " The cases in which it has been applied by the courts are too numerous for citation here, and embrace a wide range of subjects. It was held applicable to the owners of successive strata in the earth's crust in Jones v. Wagner, 66 Pa. 429, which appears to be the first case in which the obligations of the owner of the subjacent estate came before this court for consideration. We held in that case that where the mineral estate is severed from the surface by a conveyance, the lower estate passes to the grantee subject to the servitude imposed upon it by nature for the support of the surface. The surface owes to the lower

estates an easement or servitude for access. The lower estates owe to each other and to the surface an easement for support. The owner of the mine must leave enough of the mineral in place to answer the purposes of support for the surface unless the owner of the surface has released his right to support. This rule has been recognized and applied in many cases among which are Horner v. Watson, 79 Pa. 242, Coleman et al. v. Chadwick, 80 Pa. 81, Carlin & Co. v. Chappel, 101 Pa. 348, and Williams v. Hay, 120 Pa. 485. This right to support may be released by apt words in a deed of conveyance, Scranton et al. v. Phillips et al., 94 Pa. 15, but such release will not be implied from language that does not necessarily import it: Williams v. Hay, supra." In Youghiogheny River Coal Co. v. Hopkins, 198 Pa. 343, this subject is considered. On page 347, Mr. Justice BROWN speaking for the Supreme Court says : "The question is, therefore, simply whether under the lease by Hopkins to the coal company he is bound to reimburse it for the damages recovered against it by Robertson, a stranger to the agreement, whose surface had subsided as a result of the removal of the coal beneath it. The contention of the plaintiff is that Hopkins must pay, because a covenant to protect it is found in the following words of the clause quoted : ' And all damages direct or consequential and claims therefor, resulting from the mining and removal of said coal, in the doing of any and all the matters and things hereinbefore described, are hereby waived and relinquished by the said party of the first part ;' but, even if it be true that such covenant is there found, the concluding words, ' provided the party of the second part takes all ordinary precautions usually taken in mining and removing coal,' seem to be overlooked. ' Ordinary precautions ' meaning, in mining coal, proper support to the overlying surface, Jones v. Wagner, 66 Pa. 429," and many other cases. In Matulys v. Phila. & Reading Coal and Iron Company, 201 Pa. 70, the doctrine of Jones v. Wagner, supra, is again recognized by the Supreme Court. In Coleman et al. v. Chadwick, 80 Pa. 81, in the opinion of the Supreme Court on page 87, we find the following : " And all the privileges necessary for the convenient working, running and transportation of said coal, and deposition of excavated matter, and also all rights and privileges incident or usually appurtenant to the working and using of coal mines.

But we cannot perceive that this grant in any way compromises the grantor's right of surface support. If, indeed, the destruction of the superincumbent estate be one of the privileges necessarily incident and appurtenant to coal mining, the said indenture does convey the right contended for. As, however, we have just determined that such destruction of the surface is in no way incidental to such mining we must necessarily refuse our assent to the construction contended for. It is in effect but another form of a plea of a general custom or usage permissive of the removal of all subjacent support. For it is argued that when the vendor used the words, 'all rights and privileges incident or usually appurtenant to the working and using of coal mines,' he did so in view of such custom, as above referred to, and that his covenant must be interpreted accordingly. The answer to all this is, that as no such custom could have existed, becauseof its unreasonableness, it could not have entered into the contract of the parties. Support is part and parcel of the reserved estate ; it is of common right, and hence must pass, if at all, by express grant, and is not to be defeated by mere implication arising from language that does not import such an effect." Carlin & Co. v. Chappel, 101 Pa. 348, is another case which recognizes the doctrine of Jones v. Wagner.

It is argued that the testator intended to confer power on his executors to convey the coal waiving the right to surface or lateral support. Where the language of a will is clear and unambiguous, a doubt suggested by extrinsic evidence of the testator's circumstances at the time he wrote the will cannot be permitted to affect the construction of the will ; Sponsler's Appeal, 107 Pa. 95. In Schuldt's Estate, 199 Pa. on page 65, Sponsler's Appeal, supra, is quoted with approval : " Where the meaning of a will is clear, it interprets itself, and neither subsidiary facts nor extrinsic evidence can be introduced to create a doubt." In Hancock's Appeal, 112 Pa. 532, in the opinion of the Supreme Court (p. 541) it is said : " The question in expounding a will is not what the testator meant, but what is the meaning of his words."· To the same effect is Bruckman's Estate, 195 Pa. 363.

In our opinion there is no ambiguity or uncertainty in the meaning of the words used by the testator, " usual mining privileges." We are clearly of the opinion that this language

did not authorize the executor to sell and convey the coal, and waive and release the right of surface or lateral support, and, therefore, it follows that the learned court below did not err in dismissing the exceptions and refusing to surcharge the executor with the money, which it was shown he could have obtained by conveying the coal by a deed containing such waiver and release. To give to the words " usual mining privileges " the meaning and effect contended for by the appellant would be doing violence to the meaning of the words used by the testator. It would be a forced and unreasonable construction to say that the testator meant by this language to empower his executors to convey the coal and destroy or seriously damage the surface estate.

The assignments of error are all overruled, the decree of the orphans' court is affirmed and the appeal is dismissed at the costs of the appellant.