# Ferreck's Estate.

*Wills—Construction—General and specific legacies—Gift of stock.*

1. The rule is that a legacy is presumed to be general rather than specific, and the mere fact that the testator has given stock in amounts he has in hand, is not sufficient to overcome this presumption. Yet if it can be gathered from the will that the testator's intention was to make specific gifts of the stock which he owned, considering not merely the item in which the gifts were made but the will as a whole, this intention will prevail.

2. Testatrix gave to various legatees shares of certain stock owned by her, in every instance disposing of exactly the number of shares which she owned, except in one instance where she gave her husband 100 shares more than she had, having made a previous gift to him of 100 shares, in her lifetime; she did not use the word "my" in connection with the gifts of stock except in one or two

instances. She further provided in her will that if there was not sufficient money available to pay money legacies, funeral expenses, debts, etc., that her executors should "sell and dispose of my stocks as may be necessary to each legatee to be apportioned according to the value or share of his or her bequest herein." *Held,* the gifts of stock were specific and not general.

Argued April 14, 1913. Appeal, No. 19, Jan. T., 1913, by John J. Ferreck, from decree of O. C. Philadelphia Co., Jan. T., 1912, No. 337, sustaining exceptions to adjudication in Estate of Sarah J. Ferreck, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

The material parts of the will, other than those quoted in the opinion of the court, were as follows:

"Second—I give and bequeath unto my beloved husband John J. Ferreck his heirs and assigns absolutely 103 shares of Standard Oil stock 200 shares of Philada. Traction stock 715 shares of United Gas Improvement stock 150 shares of Tonopah Mining stock and all my Consolidated Gas stock and Natural fuel and light . Company stock......

"Third—I give and bequeath unto my beloved daughter Ida M. Reid 200 shares of stock of Standard Oil Company—......

"Fourth—I give and bequeath unto my executors and trustees hereinafter named 100 shares of stock of the Standard Oil Company and 300 shares of stock of the United Gas Improvement Company, in trust nevertheless to collect the income thereof and pay the same to my son John B. Warden during the term of his natural life......

"Fifth—I give and bequeath unto my executors and trustees hereinafter named 300 shares of stock of the United Gas Improvement Co. To collect the income thereof and pay the same to my sister Elizabeth Aiken for and during the term of her natural life......

"Sixth—I give and bequeath unto my grandson Joseph W. Reid five hundred shares of stock of the United Gas Improvement Co. absolutely.

"Seventh—I give and bequeath unto my great grand daughter Josephine Reid (daughter of Joseph W. Reid) 38 shares of stock of the Standard Oil Company......"

From the record it appeared that a little over two years prior to the making of the will and the death of the testatrix, she owned two hundred shares of the stock of the Philadelphia Traction Company, but that about that time she gave one hundred shares thereof to her husband, as a Christmas present, and that at the date of the making of the will and at her death she owned but one hundred shares, although two hundred shares were given by the second item of the will to her husband. LAMORELLE, J., held that the legacies of stock were general and not specific.

Exceptions to the adjudication were sustained by the court in banc. ANDERSON, J., filed the following opinion:

While the rule is that a legacy is presumed to be general rather than specific, and that the mere fact that the testator in his gifts of stock gives exactly the amount of stock he has in hand is not sufficient to over-come this presumption; yet, after all, these presumptions must give way to the intent of the testator, if it can be gathered from his will that his thought was to make specific gifts of the stock which he owned; and this intent is not to be gathered alone from the item in which the gifts are made, but gathered from the four corners of his will: Klenke's Est. (No. 2), 210 Pa. 575. Or, as it is stated by the learned author of 2 Williams on Executors 1039, "But it is quite as well settled as the rule itself, that when any indication is to be found in the will of an intention by the testator, that the property is to be enjoyed in specie in its existing state, it shall be so enjoyed. And a great number of cases (in some of which the court has laid hold of expressions,

apparently unimportant, as sufficient indications of such an intention) have been decided on this principle": Collins v. Collins, 2 M. & K. 701; Alcock v. Sloper, 2 M. & K. 699; Bethune v. Kennedy, 1 M. & Cr. 114; Pickering v. Pickering, 4 M. & Cr. 289; Goodenough v. Tremmondo, 2 Beav. 512; Vaughan v. Buck, 1 Phill. Ch. 75; Harvey v. Harvey, 5 Beav. 134; Daniel v. Warren, 2 Y. & Coll. Cr. 290; Hinves v. Hinves, 3 Hare 609; Cafe v. Bent, 5 Hare 24; Mackie v. Mackie, 5 Hare 70, 77; Hubbard v. Young, 10 Beav. 203; Hunt v. Scott, 1 DeG. & Sm. 219; Burton v. Mount, 2 DeG. & Sm. 383; Neville v. Fortescue, 16 Sim. 333; Bowden v. Bowden, 17 Sim. 65; Harris v. Poyner, 1 Drew 174; Crowe v. Grisford, 17 Beav. 507; Marshall v. Bremner, 2 Sm. & G. 237; Vachell v. Roberts, 32 Beav. 140; Hind v. Selby, 22 Beav. 373; Wearing v. Wearing, 23 Beav. 99; Skirving v. Williams, 24 Beav. 275; Holgate v. Jennings, 24 Beav. 623; Boys v. Boys, 28 Beav. 436; Rowe v. Rowe, 29 Beav. 276; Green v. Britten, 1 DeGex, J. & S. 649; Prendergast v. Prendergast, 3 H. L. C. 195, 219; et seq."

In the present case the auditing judge, following the line of cases set out in Snyder's Est., 217 Pa. 71, in the elaborate opinion of Mr. Justice BROWN, has held only those gifts specific in which the testator has used the word my in connection with the gift. In this he would unquestionably be correct if the gifts had stood alone, as that word has been held in numerous cases to show the intent of the testator to give the specific article rather than to have such an article purchased out of the general estate. After all, however, as has been said, it is the intent of the testator that has to be found, and in seeking it we are not confined to any particular word or phrase, nor to any particular part of the will, and the fact that the testator had the number of shares so given, though not controlling, is significant. In the present case, the testator, it is true except in one or two instances, did not use the word my in connection with her gifts of stock, although, except in the case of the

Philadelphia Traction stock, she gave just the number of shares she owned at the time of her death. And as to that, it is admitted by all the parties in interest that she had, prior to December 6, 1907, 200 shares of this traction stock, of which on that day she transferred 100 shares to her husband—without consideration, as contended by the specific legatees; or, as a Christmas gift, as contended by the husband. And it may be that in the making of the will she had forgotten about this transfer, treated it as an advancement or intended to confirm her husband's title and save dispute that might arise after her death with reference thereto.

But that she did intend to give the stock owned by her to her various legatees we think is clear, when we read the eleventh item of her will whereby she provides for the payment of her debts, funeral expenses, money, legacies, costs and commissions incurred in the settlement of her estate, from her cash in bank, and provides that if this was insufficient for these purposes, "then I direct my executors to sell and dispose of my stock as may be necessary to each legatee to be apportioned according to the value of his or her bequest herein," providing if there be any cash balance in bank it was to be divided between her husband and her daughter. This item illuminates the intent of the testatrix. Her thought was to divide her shares of stock amongst her legatees, giving each a certain number, and then, if possible, to pay out of the money in bank all other legacies and expenses. Fearing, however, that there might not be enough in bank to cover these claims, she provides, "If insufficient for these purposes, then I direct my executors to sell and dispose of such of my stock as may be necessary to each legatee to be apportioned according to the value of his or her bequest herein," so as to provide a fund necessary to pay the expenses, and thus allow the balance to remain in their hands; and to be fair to all, she provides the sales shall be in proportion to the amount of their legacies. This is in effect assessing

each specific legatee of her stock with a ratable proportion of the deficit, thus charging the general legacies and expenses upon them—in accord with the old doctrine that where everything is given away specifically, the expenses and general legacies will be charged upon the specific legatees: Sayer v. Sayer, Precedents in Chancery, 392.

That this is the necessary interpretation of the clause is evident; otherwise, why should the testatrix provide only for a sale of her stock after her cash had been exhausted, and why provide only for a sale of so much as necessary, and a ratable sale? If she had intended general legacies, why should she have differentiated between her pecuniary legacies and the stock legacies, or why not between the stock which it is said she gave specifically, and that which it is argued she gave generally?

Presumption and rules of construction are valuable in aiding us in seeking the intention of the testatrix; but, when, from a reading of the whole will, the intent is apparent, such rules will be disregarded; and a reading of this will convinces us that the thought of the testatrix was to specifically divide her jewelry, stocks, etc., and, if possible, to pay her debts, money legacies, and costs and commissions out of her money in bank; and if there was not sufficient, then to make her specific legatees of stock contribute ratably to make up the difference. They take their gifts so burdened, and are entitled to the benefit that goes with it, that is, the income that has accrued.

The exceptions are sustained.

John J. Ferreck appealed.

*Errors assigned* were in sustaining the exceptions.

*Alex. Simpson, Jr.,* with him *Michael Francis Doyle,* for appellant.

*James M. Beck,* with him *D. Stuart Robinson,* for appellee.

PER CURIAM, May 28, 1913:

This decree is affirmed on the opinion of Judge AN-DERSON, sustaining the exceptions to the adjudication.

Appeal dismissed with costs.