Zoe Burdick BYINGTON, Appellant (One of defendants below),

v.

Thomas Reid FULLER, Mary Stevens Fuller Ramsay, Elizabeth Fuller Gardner, Florence Johnston Miller, Emily D. Johnston Howard, Elizabeth D. Johnston Thompson, Helen Reed Cole, Margaret Truesdall Ayers, Jane Truesdall Jones, James Truesdall, Katherine Truesdall Crampton, and Burdick Truesdall, Appellees (Other defendants below),

and

First Wyoming Bank, N. A.—Cheyenne, as Successor Trustee of the Trust under the Last Will and Testament of Charles W. Burdick, Deceased, Appellee (Plaintiff below).

No. 4924.

Supreme Court of Wyoming.

Dec. 11, 1978.

John J. Rooney, of Rooney, Horiskey, Bagley & Hickey, Cheyenne, for appellant.

Byron Hirst, Glenn Parker and Thomas N. Long, Cheyenne, for Margaret Truesdall Ayers, Jane Truesdall Jones, James Truesdall, Katherine Truesdall Crampton and Burdick Truesdall.

Roy Stoddard, Jr., of Urbigkit, Mackey, Whitehead & Sullivan, P. C., and William A. Swainson, of Kline & Swainson, Cheyenne, for First Wyoming Bank, N. A.—Cheyenne, appellee.

No appearance for remaining appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This is an action for declaratory judgment. The complaint was filed by appellee, First Wyoming Bank, N.A.—Cheyenne, as Successor Trustee of the Trust under the Last Will and Testament of Charles W. Burdick, deceased, against appellant, Zoe Burdick Byington, and also Thomas Reid Fuller, Mary Stevens Fuller Ramsay, Elizabeth Fuller Gardner, Florence Johnston Miller, Emily D. Johnston Howard, Elizabeth D. Johnston Thompson, Helen Reed Cole, Margaret Truesdall Ayers, Jane Truesdall Jones, James Truesdall, Katherine Truesdall Crampton, and Burdick Truesdall (hereinafter referred to as "children") to determine, in effect, whether the assets of the trust should be distributed to such children and the appellant per capita or per stirpes. A separate answer was filed by appellant, Zoe Burdick Byington, and a separate answer was filed by Margaret Truesdall Ayers, Jane Truesdall Jones, James Truesdall, Katherine Truesdall Crampton, and Burdick Truesdall (hereinafter referred to as "other appellees"). The other children did not answer. Cross-claims were filed asserting issues other than the manner of corpus distribution and are irrelevant to the questions here on appeal.

A motion for summary judgment was filed by appellee, First Wyoming Bank, N.A.—Cheyenne, as Successor Trustee of the Trust under the Last Will and Testa-

ment of Charles W. Burdick, deceased, and a hearing was held thereon. The summary judgment was granted by the trial court and this appeal is taken from that judgment.

No evidence was presented or received and the matter was, and is, before the court on the facts agreed upon from the pleadings, a brief summary of which follows:

Decedent died January 8, 1927, leaving a will dated May 7, 1919, in which he appointed his daughter, Margaret Fuller Burdick (who later became Margaret Burdick Hewlett) and Blanch O. Lummis as Trustees, and, by implication, Executrices. By codicil, Blanche O. Lummis was replaced by George Willson Hewlett. The entire estate was given to the joint Trustees in trust during their lives and during the life of the survivor.

The relevant part of the will, which seeks to dispose of the corpus of the trust, is designated as paragraph Seventh in this opinion and provides that when the trust is terminated, the corpus should be distributed

"equally among the children then living of my half sister Jane Truesdall, my half brother Leander Fred Burdick, my brother in law Robert P. Fuller and my niece in law Katherine Johnston and my niece in law Mary Tidball Reed, and in the event described in this paragraph I hereby devise all of my estate then remaining to the said children living in the proportions above set forth."

Mrs. Hewlett died without issue on December 16, 1976, her joint trustees, George Willson Hewlett and Blanche O. Lummis, having predeceased her. The Testator's half-sister, Jane Truesdall, half-brother, Leander Fred Burdick, brother-in-la±, Robert P. Fuller, niece-in-law, Katherine Johnston, and niece-in-law, Mary Tidball Reed, also predeceased Mrs. Hewlett. At Mrs. Hewlett's death, five children of Jane Truesdall were living; one child of Leander Fred Burdick was living; three children of Robert P. Fuller were living; three children of Katherine Johnston were living; and one of Mary Tidball Reed's two children was living. All of these children were named defendants in this action.

The only issue in this case was, and is, whether the distribution of the assets of the trust should be per stirpes or per capita. Appellant contends for the per-stirpital distribution, and the other appellees contend for per-capita distribution.

The trial court decided the issue in favor of a per-capita distribution when it held

". . . that the said Will intends and means that, upon distribution, the assets subject to distribution now in the hands of Plaintiff, as Trustee, and any assets subject to distribution, subsequently coming into the hands of the Plaintiff, as Trustee, be distributed to the Defendants [all of the surviving beneficiaries named in the Will] on a per capita basis, one-thirteenth (1/13) to each. . . ." [Bracketed matter supplied]

We will affirm the judgment of the trial court.

Appellant's argument is that paragraph Seventh is ambiguous, doubtful and uncertain and, therefore, the following rules apply:

"1. When the distribution is between devisees or legatees of unequal degrees of relationship to the ancestor, the distribution should be made per stirpes (in such case the words 'equally' or 'equally divided' are used to indicate an equal division among a class).

"2. The naming of specific persons identifies testator's primary objects and determines the generational level at which division should be made.

"3. The inclusion of the last provision of Clause 7 with its measure of 'in the proportions above set forth' would be unnecessary and superfluous if not to direct a per stirpital distribution. A per capita distribution could exist without this provision. The lawyer testator can not be said to have used the words needlessly. The reference to 'above' proportions are to previous clauses in which per stirpital disposition is definitely set forth.

"4. The use of the word 'proportion' indicates an intent for a stirpital distribu-

tion. The word 'equally' as here used is ambiguous; but by adding the word 'proportion', the testator set forth his intention to apply a *ratio* and remove the ambiguity by designating a per stirpes disposition.

"5. The fact that a per capita division will operate to the prejudice of one of the testator's family has been taken as indicative of an intention to make a per stirpes division.

"6. Doubt should be resolved in favor of per stirpes distribution. It should favor that construction which adheres to the statute of descent." (From appellant's brief)

The other appellees respond to these assertions by urging that paragraph Seventh is not ambiguous or uncertain and, according to its plain terms, calls for a per-capita distribution.

### Paragraph Seventh is Clear, Unambiguous and Requires Distribution Per Capita

We agree with the contention of the other appellees that paragraph Seventh is clear and unambiguous, thus leaving no room for judicial interpretation or construction. This means that there is no reason to consider the various other contentions of the appellant since they have to do with rules of construction only. The testator directed, in paragraph Seventh, that the "estate be divided equally," and in the same sentence he devised all of the estate "to the said children then living in the proportions set out above." These directions are clear and unmistakable, and to give them meaning other than that conveyed by their plain, unequivocal language would be an exercise in judicial tinkering.

We talked about "judicial tinkering" in *Markle v. Williamson*, Wyo., 518 P.2d 621, 625, when we quoted from *Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18, 27, as follows:

" 'Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, contract or recorded word, no matter how

explicit, could be saved from judicial tinkering. Moreover, if the sense of a word is not to be taken in its usual and commonly understood meaning except under circumstances where a different meaning is clearly intended, it becomes impossible for men to mean what is said or say what they mean and purposeful communication is unattainable.' "

We will not be found guilty of judicially tinkering with the wording of paragraph Seventh.

We said in *Percival v. Percival*, Wyo., 526 P.2d 342, 343 (1974):

"It is settled law in Wyoming that courts may not read into a will something which deceased did not write therein, in order to ascertain testator's intent, but can glean his purpose only from what his testament says. (Citations)"

In *In re Gilchrist's Estate*, 50 Wyo. 153, 58 P.2d 431, 436, 60 P.2d 364, (1936), this court said:

". . . We cannot substitute speculation on our part for whatever is clearly expressed in the will. . . ."

and continued with a quotation from 28 R.C.L. 267:

". . . 'As to whether members of a class take per capita or per stirpes, the general rule is that a devise to named individuals in equal shares requires a per capita distribution, and that a devise to a class, such as "all my nephews" and the like, likewise calls for a per capita distribution. The addition of the words "equally" or "share and share alike," tends to strengthen this conclusion.' "

In *In re Gilchrist's Estate*, supra, we went on to say:

"In bequests to descendants equally, or to all the descendants of any person, or to the descendants simply, the rule has been said to be that all take per capita, unless the contrary intention appears. . . ." 58 P.2d at 437.

We then quoted from *In re Hoch's Estate*, 154 Pa. 417, 26 A. 610, 611 (1893):

". . . 'Now, if the testatrix had directed her estate to have been divided

in equal shares among her descendants, these words would have placed them all in one class, and provided a per capita distribution among them. . . .'" ·

The *Gilchrist* case is cited in the Annotation at 126 A.L.R. 157, 160, for the rule that

> ". . . where the gift is to a class the legatees take share and share alike unless it clearly appears that the testator intended a different division."

The will in this case shows no intention by the testator other than that the children of the named persons will take as a class. The rules of Gilchrist are supported by the great weight of authority. *McIntire v. McIntire*, 192 U.S. 116, 24 S.Ct. 196, 48 L.Ed. 369 (1904). In *Hoadley v. Beardsley*, S.C. of Errors, 89 Conn. 270, 93 A. 535, 540 (1915), where the provision said

> ". . . twenty-five years after my decease all the remainder of my estate both real and personal including any funds arising from the failure of any of the above objects shall be equally divided by the trustee between the legal issue of my said nephews and of my said niece Ella . . . .",

the court said:

> "The children of the nephews are in disagreement as to the basis of division between them. Some contend that it should be per capita, others per stirpes. 'The general rule is that by a bequest to the children of A. and to the children of B., the children take per capita and not per stirpes, in the absence of words indicating a different intention.' *Hill v. Bowers*, 120 Mass. 135, 136. 'Where a gift is to the children of several persons, whether it be to children of A. and B. or to the children of A. and the children of B., they take per capita and not per stirpes.' 2 Jarman on Wills (6th Ed.) 1711; *McIntire v. McIntire*, 192 U.S. 116, 121, 24 S.Ct. 196, 197, 48 L.Ed. 369. . . ."

To the same effect, see *In re Lenhart's Estate*, 344 Pa. 358, 25 A.2d 725, 727 (1949); and 4 Bowe-Parker: Page on Wills § 36.17, where it is said:

> "If testator gives property to the children of two or more persons who are not intermarried with each other, the general rule is that this calls for a distribution per capita, in the absence of distributive words, or other form of expression showing a different intent. . . ."

With these rules in mind, and finding paragraph Seventh to be clear and unambiguous, we hold the intention of the testator to be that distribution would be per capita and not per stirpes.

Affirmed.